FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 OCT 21 PM 5:05

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

David I. Sharfstein
Assistant United States Attorney
David.Sharfstein2@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

DIRECT: 410-209-4991
MAIN: 410-209-4800
FAX: 410-962-0717

August 15, 2014

Michael Edward Lawlor, Esq.
6305 Ivy Lane, Suite 608
Greenbelt, Maryland 20770

    Re:    Plea Agreement in *United States v. Carl Paschall Sr.*, JFM-13-361

Dear Counsel:

    This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by August 29, 2014, it will be deemed withdrawn. The terms of the agreement are as follows.

### Offense of Conviction

    1.    The Defendant agrees to plead guilty to Counts One and Two of the Superseding Indictment now pending against him, which charges him conspiracy to commit bank burglary, in violation of 18 U.S.C. § 371 and 18 U.S.C. § 2113(a), and arson of property used in interstate commerce, in violation of 18 U.S.C. § 844(i). The Defendant admits that he is, in fact, guilty of these offenses and will so advise the Court.

### Elements of the Offense

    2.    As to Count One, the elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

        a.  That two or more persons agreed to commit bank burglary, in violation of 18 U.S.C. § 2113(a), in that the conspirators agreed to enter and attempt to enter a building used in whole or in part as a bank whose deposits were then insured by the Federal Deposit Insurance Corporation ("FDIC") and/or the National Credit Union Administration ("NCUA"), with the

1

     intent to commit a felony affecting such bank and any larceny.

  b. That the Defendant was a member of the agreement;

  c. That the Defendant joined the conspiracy knowing of its objective and intending to achieve that objective;

  d. That at some time during the existence of the conspiracy, at least one of its members performed an overt act in order to further the objective of the agreement.

3. As to Count Two, the elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

  a. The defendant maliciously damaged or destroyed, or attempted to damage or destroy, a building, vehicle, or other real or personal property, by means of fire or an explosive; and

  b. The building, vehicle, or other real or personal property was used in interstate or foreign commerce

## Penalties

4. The maximum sentence provided by statute for Count One is 5 years imprisonment, 3 years of supervised release, and $250,000 fine. The maximum sentence provided by statute for Count Two is 20 years imprisonment, 3 years of supervised release, and $250,000 fine. The mandatory minimum sentence provided by statute for Count Two is 5 years imprisonment.

5. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

## Waiver of Rights

6. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

    e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

  g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

  h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that *if* he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

Advisory Sentencing Guidelines Apply

  7. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

  8. This Office and the Defendant understand, agree and stipulate to the Statement of Facts, which is included in Attachment A.:

  9. As to Count One in the Superseding Indictment, the parties stipulate and agree to the following guideline provisions:

- Pursuant to U.S.S.G. §2B2.1(a)(2), the base offense level for this conduct is **12**;

- The total damage caused by the conspiracy is more than $800,000, and therefore **5 levels** are added pursuant to U.S.S.G. §2B2.1(b)(2);

- The offense involved more than minimal planning, and therefore **2 levels** are added pursuant to U.S.S.G. §2B2.1(b)(1);

- A firearm, or controlled substance was taken, or the taking of such item was the object of the offense, and therefore **1 level** should be added pursuant to U.S.S.G. §2B2.1(b)(3);

- A dangerous weapon was possessed during the commission of the offense, and therefore an additional **2 levels** are added pursuant to U.S.S.G. §2B2.1(b)(4); and

- The Defendant was an manager and supervisor of criminal activity that involved five or more participants and was otherwise extensive, and therefore **3 levels** are added pursuant to U.S.S.G. §3B1.1(b).

- The parties further agree that the application of these guidelines provisions result in an adjusted offense level of **25**;

10. As to Count Two in the Superseding Indictment, the parties stipulate and agree that the provisions of U.S.S.G. §2K1.4 apply. The parties have not agreed on which specific provisions within this section of the guidelines will be applied to the conduct at issue.

11. If the Court determines that Count One and Count Two do not group under U.S.S.G. §3D1.2, the parties agree that the final offense level will require the application of U.S.S.G. §3D1.4. For example, if the Court determines that the offense levels for the two counts are less than 5 levels apart, 2 levels will be added pursuant to U.S.S.G. §3D1.4(a).

12. This Office does not oppose a **2 level reduction** in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the offense level determined prior to the operation of U.S.S.G. § 3E1.1(a) is 16 or greater, this Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an **additional one-level decrease** in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

13. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

### Rule 11(c)(1)(C) Plea

14. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of imprisonment of **66 months (5.5 years)** is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or to set any lawful conditions of supervised release pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). If the Court

5

rejects this plea agreement, either party can withdraw from this plea agreement under Federal Rule of Criminal Procedure 11(d)(2)(A), and the Defendant will be informed that he may withdraw his plea.

### Obligations of the United States Attorney's Office

15. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

16. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

### Restitution

17. The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the conspiracy. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

### Forfeiture

18. The Defendant understands that the court will, upon acceptance of his guilty plea, enter an order of forfeiture as part of his sentence, and that the order will include assets directly traceable to his offense, substitute assets and/or a money judgment equal to the value of the property subject to forfeiture. Specifically, as a consequence of the Defendant's plea of guilty to Count One of the indictment now pending against him, which charges him with conspiracy to commit bank burglary, in violation of 18 U.S.C. § 371 and 18 U.S.C. § 2113(a), and arson of property used in interstate commerce, in violation of 18 U.S.C. § 844(i), the Court will order forfeiture of any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of the offense, as well as property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), as well as substitute proceeds. The property to be forfeited includes, but is not limited to, a money judgment in the amount of $200,000.

19. The Defendant agrees to consent to the entry of orders of forfeiture for

such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

20. This office will recommend to the Attorney General that any net proceeds derived from the sale of the forfeited assets be remitted or restored to eligible victims of the offense, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. Pt. 9, and other applicable law, it being understood that this office has authority only to recommend such relief and that the final decision of whether to grant relief rests with the Department of Justice, which will make its decision in accordance with applicable law.

### Assisting the Government with Regard to the Forfeiture

21. The Defendant agrees to assist fully in the forfeiture of the foregoing assets. The Defendant agrees to disclose all of his assets and sources of income to the United States, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The Defendant also agrees to give this Office permission to request and review his federal and state income tax returns, and any credit reports maintained by any consumer credit reporting entity, until such time as the money judgment is satisfied. In this regard, the Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) as well as whatever disclosure form may be required by any credit reporting entity.

### Waiver of Further Review of Forfeiture

22. The Defendant further agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The Defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

### Waiver of Appeal

23. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

7

      b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds the **66 months** of imprisonment; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is less than **66 months** of imprisonment.

      c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

      d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

Obstruction or Other Violations of Law

    24. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

Court Not a Party

    25. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to

the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

<u>Entire Agreement</u>

26. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

\* \* \* \* \* \* \* \* \*

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
David I. Sharfstein
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

10/17/14
Date

Carl P. Paschall
Carl Paschall Sr.

I am Carl Paschall Sr.'s attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

10/17/14
Date

Michael Edward Lawlor, Esq.

10

### ATTACHMENT A:  Factual Stipulation – Carl Paschall Jr.

*The parties hereby stipulate and agree that had this matter gone to trial, the government would have proven the following facts through competent evidence beyond a reasonable doubt. The parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

**Conspiracy to Commit Bank Burglary** – Beginning no later than November 2010 through the date of his arrest in July 2013, the Defendant, Carl Paschall Jr., conspired with his codefendants, Carl Paschall Jr., Chad Paschall, and Thomas Ellis, as well as other defendants in a related case, including David Paschall Jr., Mark Johnson, and Ronald Henderson, among others, to commit commercial burglaries in Maryland, Virginia, West Virginia, and Pennsylvania.

The conspirators agreed to unlawfully enter commercial establishments, such as gas stations, convenience stores, banks, and credit unions, during the night for the purpose of stealing items of value, including cash, money orders, stamps, silver bars, jewelry, cigarettes, lottery tickets, prescription drugs, food, beverages, safes, laptop computers, cell phones, electronics, vehicles, and other valuable items. On many occasions, the conspirators stole or attempted to steal cash from Automated Teller Machines (ATMs).

Although the methods used by the conspirators varied slightly depending on the business to be burglarized, the conspirators usually cut power lines, telephone lines, cables and other wires prior to entering the business. In order to gain unlawful entry, the conspirators used tools such as vise grips, sledgehammers, chopsaws, grinders and blow torches. After unlawfully entering the business, the conspirators often waited – sometimes for several minutes, sometimes for up to several hours – before ransacking the business of its valuable items.

The Defendant agrees that he was a manager and supervisor of a criminal enterprise comprised of more than five people and that was otherwise extensive.

The Defendant agreed that he committed, or attempted to commit, dozens of commercial burglaries and that the loss resulting from these burglaries (in terms of both property damage and stolen items) exceeded $800,000. He specifically admits that he participated in the following overt acts in furtherance of the conspiracy:

- On November 10, 2010, the Defendant, along with Carl Paschall Jr. and several other coconspirators, committed a commercial burglary at Crazy Ray's, a salvage yard, located in the 2800 block of Hawkins Point Road in Baltimore City, Maryland. The conspirators broke into the main office and removed a small safe. They then used a forklift to break the safe open and stole approximately $34,700.

- On May 5, 2011, the conspirators committed a commercial burglary at BPR Automotive, located at 1009 Leslie Ave, Catonsville Maryland 21228. The conspirators cut the wires for the business's alarm system. The conspirators stole, among other items, a safe located in the office. A Taurus handgun, serial number

11

BM578667, which was owned by the business's owner, was inside the stolen safe. This firearm was recovered on July 18, 2012 during the execution of a search and seizure warrant at Carl Paschall Jr.'s residence at 2625 Hollins Ferry Road, Baltimore, Maryland 21227.

- On March 3, 2012, the Defendant, Carl Paschall Jr., Ronald Henderson committed a commercial burglary at the Riverton Shell gas station located at 10178 Winchester Road in Front Royal, Virginia. Prior to committing this burglary, the conspirators stole a truck outside a nearby business. From the truck, the conspirators stole saws, grinders, crow bars, drills, wire cutters, and other equipment. The conspirators then cut the phone lines outside the Riverton Shell gas station and popped the lock to the front door. Once inside the business, the conspirators stole $12,100 in cash, fifty (50) Stage coach .999 silver bars, $20,000 worth of cigarettes, and a laptop computer. After returning to Maryland, the Ronald Henderson sold the Stage coach silver bars at a pawn shop in Anne Arundel County, Maryland.

- On March 25, 2012, the Defendant, along with Carl Paschall Jr. and at least one other coconspirator, committed a commercial burglary at Smyth Jewelers, located at 10030 Baltimore National Pike. At approximately 8:30pm that evening, the conspirators cut the phone lines outside the business. At approximately 11:00pm, he conspirators broke into the business next door, Enchanted Cleaners, by prying open the rear door of the business. The conspirators stole approximately $3,000 in cash from the Enchanted Cleaners business. Then, the conspirators used a large sledgehammer to break through the wall between Enchanted Cleaners and Smyth Jewelers. Once inside Smyth Jewelers, the conspirators dismantled the alarm system on the wall and accessed the breaker box to shut off all of the lights to the building. The suspects unsuccessfully attempted to break into several safes using sledge hammers and cutting tools. The conspirators eventually stole approximately 1,000 pieces of jewelry valued at $300,000.

- On May 26, 2012, the Defendant, Carl Paschall Jr., and at least one other conspirator, committed a commercial burglary at the EZ Mart, located in Harpers Ferry, West Virginia. The conspirators, wearing all black, cut the phone lines and then broke into the business. The conspirators were in the store for over two hours. They broke into the ATM and stole cartons of cigarettes. A safe containing West Virginia Lottery Tickets was stolen.

- On May 27, 2012, the Defendant, Carl Paschall Jr., and at least one other conspirator committed a commercial burglary at the Handy Mart in Winchester, Virginia. The conspirators wore black masks and dark colored sweatshirts. They cut the wires outside of the building, popped the lock on the front door, and knocked the motion sensor off the wall. After gaining entry, they pulled all the wires from the video monitor to stop it from recording. They stole two floor safes and all of the cash in the store's ATM.

12

- Also on May 27, 2012, Defendant, Carl Paschall Jr., and at least one other conspirator committed a commercial burglary at a Mexican restaurant, Casa Gonzalez, in Martinsburg, West Virginia. Prior to entry, the conspirators cut the phone lines for the business. The conspirators stole a floor safe containing $85,000 worth of jewelry and $50,000 in cash.

- On August 6, 2012, the Defendant, Carl Paschall Jr., and at least one other coconspirator committed a commercial burglary occurred at the Bedington Crossroads store, located at 4081 Williamsport Pike, Martinsburg, West Virginia. The conspirators were dressed in all black clothing, ski masks and gloves. At about 2:45am, the conspirators cut the telephone lines and other cables outside the business. A pair of vise grips were used to gain entry through the front door. The conspirators attempted to break into the ATM machine on the premises, which was owned by BB&T bank, a FDIC insured bank, but they could not access the interior cash drawer. The conspirators eventually stole $1,785 in coins and a safe containing approximately $2,300 in cash, $1,000 worth of postage stamps, and 500-600 unused money orders.

- On September 10, 2012, the Defendant, along with Carl Paschall Jr., Chad Paschall, Thomas Ellis, and Michael Johnson attempted a commercial burglary at the 7-Eleven located at 4051 National Pike, Grantsville, Maryland. The coconspirators dressed in dark clothing to hide their presence. At approximately 1:45 am, Carl Paschall Jr., climbed onto the roof of the store and cut the telephone lines to the business. The Carl Paschall Jr. then used a crow bar to destroy an alarm siren box off of the roof. At approximately 1:55 am, Carl Paschall Jr. and two other suspects broke into the business by shattering glass adjacent to the rear door. While inside the business, the conspirators transported the floor safe to the front doors of the store and attempted to pry into an ATM machine which was owned and operated by M&T Bank, whose deposits were insured by the FDIC. Concerned about the presence of law enforcement, the three conspirators then fled the store and were picked up by the Defendant in the Chevrolet Avalanche. The conspirators eventually headed east on I-68 where a traffic stop was conducted by the Maryland State Police. Carl Paschall, Sr., Carl Paschall, Jr., Chad Paschall, Thomas Ellis, and Michael Johnson were the occupants of the vehicle. Pursuant to a search warrant, the 2004 Chevrolet Avalanche was searched and the following items were seized: multiple black ski masks, GPS Units, two gas powered chop saws, an electric saw, an electric grinder, multiple crow bars and pry tools, two-way radios, a police scanner, and multiple sets of gloves.

- On April 21, 2013, just after midnight, the Carl Paschall Jr. and Thomas Ellis, driving separate vehicles, one of which was occupied by the Defendant, travelled to the area around Delta, Pennsylvania and Whiteford, Maryland. At approximately 2:12 am, the conspirators met at a Fork BP gas station in Kingsville, Maryland. Dressed in all black, they approached the gas station.

From 3:15am until 3:37 am, one of the conspirators used a motorized tool to open the door. From 3:58 am until 4:35 am, the conspirators burglarized the gas station. In total, the conspirators stole approximately $460 dollars from the cash register and 189 cartons of cigarettes from the gas station. The gas station also contained an ATM owned and operated by WFSF bank, which was at the time insured by the FDIC. The ATM had been cut open with a blow torch and $13,240 in cash was stolen.

**Arson of Property Used in Interstate Commerce** – As described above, the Defendant and his son, Carl Paschall, Jr. committed three commercial burglaries on May 26 and May 27, 2012, at the EZ Mart, located in Harpers Ferry, West Virginia, the Handy Mart, located in Winchester, Virginia, and a Mexican restaurant, Casa Gonzalez, located in Martinsburg, West Virginia. On May 26, 2012, the conspirators stole a white 2012 Ford E250 panel van from an Enterprise Rental Car Office in Martinsburg, West Virginia. At the time it was stolen, the tag on the van was WYB2455. The van was used during the burglaries and was captured on the video at the Handy Mart in Winchester, Virginia.

The Defendant and Carl Paschall Jr. drove the Ford E250 from Martinsburg, West Virginia, to Maryland with the items they had stolen while in Virginia and West Virginia. At some point during this trip, the Defendant placed a different license plate on the Ford E250 so that they would avoid detection. He used a license plate (68N932) that he stole from a business he partially owned, called House of Metal, located at 3000 Wilkins Avenue, Baltimore Maryland 21223. House of Metal is a half mile away from the Defendant's brother's business, Paschall Auto Body Shop, 801 Desoto Road, Baltimore Maryland.

Late in the evening on May 31, 2012, the conspirators drove the Ford E250 to Newport Rd, Woodbine Maryland 21797 and parked the vehicle on the side of the road. The conspirators left other evidence of their crimes inside the stolen vehicle – including the stolen safes from the EZ Mart and Casa Gonzalez and stolen lottery tickets. They applied an ignitable fluid to the inside of the Ford E250 and used an incendiary device to set the Ford E250 on fire.

Early in the morning on June 1, 2012, Howard County Fire and Rescue Department responded to a reported fire on Newport Road. Once at the scene, they encountered the Ford E250 fully engulfed in flames. After extinguishing the fire, the remaining contents of the Ford E250 was preserved for law enforcement.

I have reviewed the foregoing statement of facts with my attorney, and I understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case.

Agreed to this _17_ day of _October_ 2014.

_Carl P. Paschall_
Carl Paschall Sr.

14